IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Steven K. Williamson,                    )          Civil Action No. 8:12-02887-JFA-JDA
                        Plaintiff,       )
                                         )
            vs.                          )          **REPORT AND RECOMMENDATION**
                                         )          **OF MAGISTRATE JUDGE**
Carolyn W. Colvin,[1]                    )
Commissioner of Social Security,         )
                                         )
                        Defendant.       )

        This matter is before the Court for a Report and Recommendation pursuant to 28

U.S.C. § 636(b)(1)(B)[2] and Local Civil Rule 73.02(B)(2)(a), D.S.C.  Plaintiff brought this

action pursuant to 42 U.S.C. §§ 405(g) to obtain judicial review of a final decision of

Defendant Commissioner of Social Security ("the Commissioner"), denying Plaintiff's

claims for disability insurance benefits ("DIB").  For the reasons set forth below, it is

recommended that the decision of the Commissioner be affirmed.

## PROCEDURAL HISTORY

        Plaintiff filed an application for DIB on June 19, 2008, alleging an onset of disability

date of September 1, 2003.[3]    [R. 134–146.]  The claim was denied initially and on

reconsideration by the Social Security Administration ("the Administration").  [R. 54–64.]

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]A Report and Recommendation is being filed in this case in which one or both parties declined to consent to disposition by a magistrate judge.

[3]Plaintiff originally claimed a disability date of September 1, 2003 and later amended it to June 3, 2008.  [*See* R. 16.]

A timely request for hearing was made, and on February 9, 2011, Administrative Law Judge ("ALJ") Thomas G. Henderson held a hearing on Plaintiff's claim. [R. 32–53.]   On March 9, 2011, the ALJ issued his decision that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act ("the Act") through December 31, 2010, the last date insured. [R. 13–31.]

At Step 1,[4] the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2010 and had not engaged in substantial gainful activity during the period from his alleged onset date of June 3, 2008 through his date last insured of December 31, 2010. [R. 18, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had severe impairments of chronic obstructive pulmonary disease and lumbar degenerative disc disease. [R. 18, Finding 3.] The ALJ also found that Plaintiff had a non-severe impairment of diminished lower extremity pulse and discoloration, carpal tunnel, sleep apnea, depression, and anxiety. [R. 18–19, Finding 3.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 19–20, Finding 4.] The ALJ specifically considered Listing 1.04 and Listing 3.02. [R. 19–20.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

---

[4] The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

2

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). Sedentary exertional work is described by the Commissioner of the Social Security Administration as requiring lifting and carrying no more than 10 pounds at a time, sitting for six hours in an eight-hour workday, and standing and walking for two hours in an eight-hour workday. The claimant is limited to a sit/stand option with occasional postural activities but no climbing and avoiding environmental irritants such as fumes, gases, and noxious odors.

[R. 20, Finding 5.] Based on this RFC, the ALJ determined at Step 4 that Plaintiff was unable to perform his past relevant work [R. 25, Finding 6]; however, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform [R. 26, Finding 10]. Consequently, the ALJ concluded Plaintiff was not under a disability as defined by the Act from the amended alleged onset date of June 3, 2008 through December 31, 2010, the date last insured. [R. 27, Finding 11.]

Plaintiff's request for Appeals Council review was denied on August 13, 2012. [R.1–5.] Plaintiff filed this action for judicial review on October 5, 2012. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and argues that the ALJ

(1)     erred in determining Plaintiff's credibility [Doc. 20 at 17–25; Doc. 26 at 1–4];

(2)     failed to properly assess the treating physicians opinion [Doc. 20 at 26–31; Doc. 26 at 5–6]; and

(3)     failed to explain his findings regarding Plaintiff's RFC [Doc. 20 at 31–34; Doc. 26 at 6–7].

3

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence in that the ALJ

(1)    properly assessed Plaintiff's credibility [Doc. 22 at 10–14];

(2)    reasonably accorded little weight to the treating physician's opinion [*id*. at 14–17]; and

(3)    properly assessed Plaintiff's RFC [*id*. at 18–20].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76

F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'"  *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose."  *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir.

1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material

> and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5] With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C.

§ 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured

for benefits, who are not of retirement age, who properly apply, and who are under a

disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations

have reduced the statutory definition of disability to a series of five sequential questions.

*See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency"

in considering disability claims).  The ALJ must consider whether (1) the claimant is

engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the

impairment meets or equals an impairment included in the Administration's Official Listings

of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents

the claimant from performing past relevant work; and (5) the impairment prevents the

claimant from having substantial gainful employment.  20 C.F.R. § 404.1520.  Through the

fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699

F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day

8

of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* § 404.1574–.1575.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that,

9

when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[6] 20 C.F.R. § 404.1520(d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[7] with the physical and mental demands of the kind

---

[6]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. § 416.911.

[7]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 404.1560(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. § 404.1520(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).    To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").    Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[8]    20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).    When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to

---

[8]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  20 C.F.R. § 404.1569a(c)(1).

11

prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the

ALJ must give it controlling weight.  20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of

the medical findings and other evidence that support a medical source's statement that a claimant is disabled.   20 C.F.R. § 404.1527(d).   However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.   *Id.*

## IV.     Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.   20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).   The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.   20 C.F.R. § 404.1517.   Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.   *Id.*

## V.     Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.   42 U.S.C. § 423(d)(5)(A).   In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.   *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).   First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which

14

could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:

15

...

> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.   Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

16

Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Credibility Determination**

Plaintiff argues the ALJ improperly evaluated Plaintiff's testimony regarding his allegations of disabling pain. Specifically, Plaintiff argues the ALJ failed to cite to certain evidence in the record supportive of Plaintiff's position that he is disabled, e.g. evidence that showed discoloration of Plaintiffs lower extremities; evidence that symptoms included weakness, and that he could only partially bear weight, and he needed assistance; and evidence that he experienced numbness and tingling in his lower extremities due to his lower back problems. [*See* Doc. 20 at 19–22.] Plaintiff submits that this evidence "demonstrates [Plaintiff's] problems of circulatory compromise, strength deficits and neurological deficits, and the ALJ's determination regarding credibility is not supported by the medical records." [*Id.* at 21.] Plaintiff also contends the ALJ erred by failing to consider Plaintiff's attempts to try to quit smoking, noting that Plaintiff "did not ignore the medical advice; he was simply unable to break his addiction despite numerous attempts and a variety of methods to try to quit smoking." [*Id.* at 22.] Additionally, Plaintiff alleges the ALJ

omitted certain information regarding his activities of daily living, like the fact that while he helped with chores in the home, he had to take frequent breaks due to his shortness of breath; that Plaintiff sometimes needed help getting dressed because he had trouble bending; that while he went to see his mom, he had to get up and move around; and that he had stopped driving two years prior to the hearing. [*Id.* at 23.] Plaintiff also points out that, while the ALJ read Plaintiff's record as indicating he was not being completely truthful regarding the need for narcotic pain medications, the ALJ failed to consider that the Plaintiff's persistent efforts to obtain pain relief was a strong indication that his symptoms were a source of distress. [*Id.* at 25.] Finally, Plaintiff contends the ALJ failed to consider an MRI from June 2010 showing evidence of moderate to advanced L4-L5 and L5-S1 facet arthropathy. [*Id.*]

Whenever a claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the claimant's statements based on a consideration of the entire case record.  SSR 96-7p, 61 Fed. Reg. at 34,485. The credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*; *see also Hammond*, 765 F.2d at 426 (stating that the ALJ's credibility determination "must refer specifically to the evidence informing the ALJ's conclusions").  In evaluating the intensity and persistence of the claimant's pain, the ALJ should consider evidence other than the claimant's complaints, including (1) the claimant's daily activities; (2) the location, duration, frequency, and

18

intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain; (5) treatment, other than medication, the claimant receives or has received for relief of the pain; (6) any measures the claimant uses or has used to relieve the pain; and (7) any other factors concerning the claimant's functional limitations and restrictions due to the pain.  20 C.F.R. § 404.1529(c)(3).  Moreover, to "determin[e] the extent to which . . . symptoms, such as pain, affect [the Plaintiff's] capacity to perform basic work activities," the ALJ is to "consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence," which includes medical and other evidence.  *Id.* § 404.1529(c)(4); *see also, e.g.*, *Craig*, 76 F.3d at 595 ("Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.").

### *The ALJ's Assessment of Plaintiff's Credibility*

Here, the ALJ found Plaintiff's "medically determinable impairment could reasonably be expected to cause some of his alleged symptoms; however, the statements by [Plaintiff] concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the above residual functional capacity assessment."  [R. 21.]  After this statement, the ALJ stated:

19

Specifically, the record does not substantiate the claimant's allegations as to the severely restricting nature of his musculoskeletal impairment noting that despite continued complaints of totally disabling back pain, he was nonetheless routinely described as "not in any apparent distress" when examined in June 2008, May 2009, July 2009, and October 2009. (Exhibits 11F, 13F, and 14F)  While the claimant has a history of lumbar degenerative disc disease, there is no indication that the claimant has required surgery or inpatient hospitalization for this condition.  A review of the evidence of record fails to reveal any signs of muscular atrophy, strength deficits, circulatory compromise, neurological deficits, muscle spasms, or change in weight, which may be reliable indicators of long-standing, severe or intense pain, and/or physical inactivity.  In spite of his allegations of disabling back pain, the claimant has not sought additional treatment including physical therapy, biofeedback, surgery, or treatment from a pain clinic. The record includes statements by doctors suggesting the claimant was not being completely truthful regarding the need for narcotic pain medications and he was seeking emergency treatment in order get prescriptions for these medications. (Exhibits 8F, 11F, 12F) and 14F)  The undersigned finds that as a result of the claimant's history of drug seeking behavior, some exaggeration of the claimant's symptoms and complaints of pain can be assumed.

The medical evidence does not substantiate the claimant's allegations as to the severity of his respiratory impairment and resulting functional limitations.  While the claimant has been assessed with COPD, there is no evidence that he has sought or received any treatment from a pulmonary/respiratory specialist.  Pulmonary function tests performed in September 2008 showed positive bronchodilator response (FEV1 of 1.92 liters and FEC of 4.63 liters) (Exhibit 4F) and the claimant had oxygen saturation rates of 90% in June 2008, 97% in October 2009, and 93% in June 2010.  (Exhibit 13F)  Moreover, the medical records show that the claimant continued to smoke not withstanding his respiratory issues.  (Exhibits 3F, 11F, and 14F).

Despite the allegations of severe functional limitations, the evidence of record reveals that the claimant has retained a significant range of activities of daily living.  As discussed previously, the claimant was able to maintain his personal hygiene and needs independently, do light household chores,

20

prepare simple meals, walk around the block for exercise, read, watch television, drive, visit his mother, run errands, and go grocery shopping with his wife. (Exhibits 3F, 6E and 10E) Such activities are inconsistent with complaints of disabling limitations.  While I note that the claimant's ability to perform some physical tasks (at his own pace and in his own manner) is insufficient to establish that the claimant can engage in substantial gainful activity, as noted in the claimant's activities as described above, these activities rise above the ability to work only a few hours a day or to work only on an intermittent basis and indicate functional abilities substantially greater than those alleged.

I conclude the testimony of the claimant is not fully credible concerning the severity of his symptoms and the extent of his limitations.  Neither the severity nor the extent is supported by the objective medical evidence of record.

***

I conclude that, while the claimant's lumbar degenerative disc disease is a severe impairment, his treatment has been essentially routine and/or conservative in nature and generally successful in controlling those symptoms.  The objective evidence of record failed to show that the claimant's back condition has deteriorated in severity to the point it is disabling. Medical records from Friendship Medical Clinic, Waccamaw Community Hospital, and Conway Physicians Group document the claimant's low back and radicular symptoms were managed well with various medications. (Exhibits 3F, 8F, 11F, 12F, 13F, 14F, and 15F)  Nevertheless, as a result of his degenerative disc disease, the claimant has required some treatment and experienced some limitations. Therefore, I have limited the claimant to sedentary work activity with a sit/stand option and occasional postural activities but no climbing. These limitations are sufficient since the examinations in June 2008, May 2009, July 2009, and October 2009 failed to show any frequent, radicular, or severely intense pain.  (Exhibits 11F, 13F and 14F)  An x-ray of the lumbar spine performed in May 2008 was unremarkable and in June 2008, the claimant exhibited full range of motion of the back and extremities with no tenderness or deformity and normal gait. (Exhibits 11F and 14F)  Dr. Regina Roman performed a thorough consultative medical examination on September 9, 2008 reporting the claimant had a normal gait without using an assistive device

and was able to get one and off the examination table, go from supine to seated position, and able to perform a full squat without assistance. The claimant had some lumbar tenderness with decreased range of motion but no paravertebral muscular tenderness, spasm, or scoliosis. He demonstrated 5/5 muscle strength, no atrophy, good deep tendon reflexes and intact sensation. (Exhibit 3F).

On January 12, 2009, the claimant was seen in the emergency room for acute back pain but an x-ray of the lumbar spine showed no abnormalities. The claimant was given prescriptions for a muscle relaxer, narcotic pain medication, and anti-inflammatory medication. (Exhibit 8F) Two weeks later, on January 27, 2009, the claimant was seen in the emergency room again for back pain, describing his pain as waxing/waning and reporting he had run out of pain medications. Examination showed some soft tissue tenderness and limited range of motion of the back with normal inspection. The claimant exhibited full range of motion of the extremities with no sensory loss or motor deficits and normal reflexes. The claimant was assessed with sciatica and given prescriptions for Vicodin (5 mg.) and Flexeril (10mg.) with no refills. On February 9, 2009, the claimant presented to Conway Medical Center emergency room for complaints of low back pain. Examination was normal except for tenderness. The claimant w[a]s prescribed Oxycontin. On February 14, 2009, the claimant returned to the emergency room reporting he had run out of his medications. Examination was normal. When refused narcotic medication, the claimant became enraged leaving the emergency room without treatment and threatening to burn the hospital down. The police were called and a complaint by the hospital was signed. (Exhibit 14F) The claimant went to Friendship Clinic on March 17, 2009, with complaints of low back pain requesting pain medications. The claimant was described as an "oddly fixated individual". He was seen again on April 14, 2009, wanting pain medications. Examination was normal. (Exhibit 11F) The claimant's chart was reviewed on August 11, 2009, and instructions for no further refills of narcotic medications were noted. (Exhibit 11F) On September 11, 2009, the claimant presented to the emergency room of Waccamaw Community Hospital for complaints of chronic back pain and given a prescription for Percocet (16 pills) with no refills. The claimant told doctors that he had been dismissed by his physician because "they were tired of seeing him". (Exhibit 12F)

22

In October 2009, the claimant was seen by Dr. Gordon of Conway Physicians Group on a self-referral for pain management (medications).  Physical examination showed some lumbar tenderness but the claimant exhibited a steady gait with good deep tendon reflexes and sensation.  (Exhibit 13F)  The claimant was not seen by Dr. Gordon again until June 23, 2010, when he requested refills on his medications and also had paperwork for handicapped parking permit.  No examination findings were noted. (Exhibit 15F)  An lumbar MRI performed on June 24, 2010, revealed moderate to advanced L4-5 and L5-S1 facet arthropathy and herniation at L5-S1 with chronic disc degeneration and but no stenosis or nerve root impingement. (Exhibit 18F)  There is no evidence of treatment beyond June 2010.

Although the claimant's allegations of debilitating symptoms due to his back condition are not fully consistent with the record, I accorded the claimant the benefit of the doubt and reduced the residual functional capacity because of some measure of subjective pain to include significant limitations from the amount he can sit, stand, walk, lift, carry, and climb. I cannot find the claimant's allegations that he is incapable of all work activity to be credible for the reasons stated previously. . . .

[R.  21–24 (footnote omitted).]

### *Analysis*

Upon reviewing the ALJ's decision, the Court does not find that the ALJ conducted an improper credibility analysis or that his decision otherwise reflects a failure to properly consider the subjective testimony and evidence in this case.  To the contrary, the ALJ sufficiently explained his reasoning for discounting Plaintiff's claim of complete disability due to pain.  The ALJ expressly evaluated Plaintiff's pain complaints in accordance with the two-step process and, likewise, considered the relevant factors outlined in 20 C.F.R. § 404.1529(c)(3).  Contrary to Plaintiff's suggestion, an ALJ is not required to specifically discuss and analyze every piece of evidence in the case in their narrative opinions so long

as it is possible for the reviewing court to realize that all relevant evidence was considered, though not written about, in reaching the ultimate decision. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (finding that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection" insufficient to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole); *Phillips v. Barnhart*, 91 F. Appx 775, 780 n. 7 (3d Cir. 2004) ("[T]he ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it."); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted.").    Additionally, contrary to Plaintiff's suggestion,  the ALJ did in fact expressly consider Plaintiff lumbar MRI performed on June 24, 2010, noting that it revealed moderate to advanced L4-5 and L5-S1 facet arthropathy. [R. 24.]

    With respect to the ALJ's conclusion regarding Plaintiff's continued smoking, i.e., that it goes against medical advice and makes Plaintiff's claims of disabling limitations less credible, such conclusion is appropriate under the present case law and is supported by substantial evidence. *See, e.g.*, *Gregory v. Commissioner of Social Sec. Admin.*, C/A No. 1:09–413–HMH–SVH, 2010 WL 3046991, at *11 (D.S.C. July 12, 2010) ("Plaintiff's failure to stop smoking or even attempt to stop smoking supports the ALJ's finding that Plaintiff's allegations about disabling limitations from her headaches and COPD were not fully credible.") (citing *Hambrick v. Astrue*, C/A No. 5:07–779, 2009 WL 89423, at *8 (S.D.W.V. March 30, 2009)); *Johnson v. Bowen*, 866 F.2d 274, 275 (8th Cir. 1989)).  Likewise, the

ALJ adequately explained his conclusion that Plaintiff engaged in drug-seeking behavior rather than behavior showing efforts to obtain pain relief. The ALJ explained that the record contained "statements by doctors suggesting the claimant was not being completely truthful regarding the need for narcotic pain medications and he was seeking emergency treatment in order get prescriptions for these medications. The undersigned finds that as a result of the claimant's history of drug seeking behavior, some exaggeration of the claimant's symptoms and complaints of pain can be assumed." [R. 22 (internal citations omitted).] It is not the duty of the Court to reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," the court must defer to the Commissioner's decision. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

Lastly, the court finds substantial evidence supports the ALJ's conclusion that Plaintiff's activities of daily living are inconsistent with his allegations of significant functional limitations. Moreover, the ALJ took into account Plaintiff's inability to walk 100 feet in the RFC, limiting Plaintiff to sedentary work and noting that Dr. Gordon indicated this disability was temporary. [R. 22–23.] Additionally, as a result of his degenerative disc disease, the ALJ limited Plaintiff to sedentary work with a sit/stand option and occasional postural activities but no climbing, noting that

> [t]hese limitations are sufficient since the examinations in June 2008, May 2009, July 2009, and October 2009 failed to show any frequent, radicular, or severely intense pain. (Exhibits 11F, 13F and 14F) An x-ray of the lumbar spine performed in May 2008 was unremarkable and in June 2008, the claimant exhibited full range of motion of the back and extremities with no tenderness or deformity and normal gait. (Exhibits 11F and

25

> 14F)  Dr. Regina Roman performed a thorough consultative medical examination on September 9, 2008 reporting the claimant had a normal gait without using an assistive device and was able to get one and off the examination table, go from supine to seated position, and able to perform a full squat without assistance.   The claimant had some lumbar tenderness with decreased range of motion but no paravertebral muscular tenderness, spasm, or scoliosis.  He demonstrated 5/5 muscle strength, no atrophy, good deep tendon reflexes and intact sensation.  (Exhibit 3F).

[R. 23.]

Further, with respect to Plaintiff's COPD, the ALJ determined that "his capacity is limited to work not requiring exposure to lung irritants such as fumes, gases, and noxious odors."  [R. 25.]  The ALJ used proper criteria to determine credibility and adequately explained his findings, and the Plaintiff has failed to show how any of the evidence cited as being overlooked by the ALJ would necessarily change the outcome of this matter, i.e., even accepted as true, Plaintiff's difficulty walking and bending, and his decision not to drive, do not preclude him from being able to perform sedentary work.  Plaintiff fails to point to any evidence of record that contradicts or undermines the ALJ's findings.  Plaintiff merely seeks to have the Court reweigh the evidence already considered by the ALJ; such an exercise is contrary to law.  Thus, the Court finds the ALJ's credibility analysis is supported by substantial evidence.

**Weight Assigned to the Treating Physician's Opinion**

Plaintiff contends the ALJ improperly concluded that Dr. Paul Gordon's February 2011 opinion was not supported by objective findings and failed to give any opinion as to Plaintiff's RFC.  [Doc. 20 at 28.]  Plaintiff contends the ALJ should have asked Dr. Gordon

for clarification or information to support his position if the evidence of record was inadequate. [*Id.* at 29.]

The responsibility for weighing evidence falls on the Commissioner or the ALJ, not the reviewing court. *See Craig*, 76 F.3d at 589; *Laws*, 368 F.2d at 642; *Snyder*, 307 F.2d at 520. The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). ALJs typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (quoting *Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. § 404.1527(c).

Additionally, Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996).  However, not every opinion offered by a treating

source is entitled to deference:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions.  In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work.  Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner.  Such opinions on these issues must not be disregarded.  However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(e)

(stating an ALJ does not have to "give any special significance to the source of an opinion

on issues reserved to the Commissioner," such as an opinion that the claimant is disabled,

the claimant's impairments meet or equal a listing, or the claimant has a certain RFC).

### The ALJ's Assessment of Dr. Gordon's Opinion

In considering Dr. Gordon's February 2011 opinion, the ALJ stated,

In a statement signed by Dr. Gordon in February 2011, he neglected to provide any medical evidence or objective findings to support the claimant's subjective symptoms and limitations, nor did he offer any opinion as to the claimant's residual functional capacity.  Nevertheless, in light most favorable to the claimant, I have considered this statement, factoring into the residual functional capacity the claimant's need to change positions between sitting and standing as set forth below.

[R. 23.]

### Analysis

An ALJ should recontact a treating physician when the information the physician

provides is inadequate for the ALJ to determine whether the applicant is actually disabled.

28

*See* 20 C.F.R. § 404.1512(e).[9]   SSR 96–5p requires recontact when both (a) the record

fails to support a treating source's opinion and (b) the basis of the treating source's opinion

is unascertainable from the record.   The regulations do not require an ALJ to recontact a

treating physician whose opinion was inherently contradictory or unreliable.   This is

especially true when the ALJ is able to determine from the record whether the applicant

is disabled.   *See Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004) (holding that there

is no need to recontact a treating physician where the ALJ can determine from the record

whether the applicant is disabled).

In this case, the ALJ was able to determine that Plaintiff was not disabled from the

record.  Upon considering Dr. Gordon's statement, the ALJ found that Dr. Gordon failed

to provide or identify any medical evidence or objective findings to support the Plaintiff's

subjective symptoms and failed to offer any opinion as to the Plaintiff's residual functional

capacity.  [R. 23.]  Nevertheless, the ALJ considered the statement and factored it into the

---

[9]At the time of the ALJ's decision, this section provided, in part:

(e)      Re-contacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.

    (1)      We will first re-contact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

20 C.F.R. §§ 404.1512(e).  Effective March 26, 2012, the Commissioner amended 20 C.F.R. § 404.1512 to remove former paragraph (e) and the duty it imposed on ALJs to recontact a disability claimant's treating physician under certain circumstances.  *See How We Collect and Consider Evidence of Disability*, 77 Fed. Reg. 10,651–01, *10655 (Feb. 23, 2012).

RFC with respect to Plaintiff's need to change positions between sitting and standing.

Additionally, the ALJ noted,

> In October 2009, the claimant was seen by Dr. Gordon of Conway Physicians Group on a self referral for pain management (medications). Physical examination showed some lumbar tenderness but the claimant exhibited a steady gait with good deep tendon reflexes and sensation. (Exhibit 13F)  The claimant was not seen by Dr. Gordon again until June 23, 2010, when he requested refills on his medications and also had paperwork for handicapped parking permit.  No examination findings were noted. (Exhibit 15F)  An lumbar MRI performed on June 24, 2010, revealed moderate to advanced L4-5 and L5-S1 facet arthropathy and herniation at L5-S1 with chronic disc degeneration and but no stenosis or nerve root impingement.  (Exhibit 18F)  There is no evidence of treatment beyond June 2010.

[R. 24.]   The ALJ did not express confusion regarding the basis of Dr. Gordon's opinion; instead, he concluded that the purported basis for Dr. Gordon's opinion—his treatment notes—did not provide any medical evidence or objective findings to support Plaintiff's subjective symptoms and limitations.   This distinction is dispositive.   *See Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 512 (S.D. Tex. 2003) ("[T]he ALJ had no obligation to recontact [the physician], because the ALJ's failure to credit [the physicians] assessment was not based on a inability to determine the basis of [the physician's] opinion, but rather an absence of evidence that supported [the physician's] conclusions.").   The ALJ also found that the DDS medical consultants reviewed the medical evidence of record pertaining to the Plaintiff's functional limitations and found that the Plaintiff was not disabled.  [R. 23.]  Based on the above, the Court finds the ALJ was under no obligation to recontact Dr. Gordon.  *See Tadlock v. Astrue*, Civil Action No. 8:06-3610-RBH, 2008 WL 628591, at *8 (D.S.C. March 4, 2008) (holding it was not reversible error where ALJ did not recontact physician whose opinions were internally inconsistent); *Jackson v. Barnhart*, 368 F. Supp. 2d 504, 508–509 (D.S.C. 2005) (holding an ALJ had no duty to recontact a

treating physician where the ALJ found objective medical evidence, including the physician's own treatment records, wholly inconsistent with the physician's opinion). Accordingly, the undersigned finds no merit in Plaintiff's argument.

**Residual Functional Capacity Findings**

Plaintiff contends the ALJ's RFC assessment was "simply conclusory" and failed to "contain any rationale or reference to the supporting evidence." [Doc. 20 at 31.] Plaintiff contends that while the ALJ concluded Plaintiff's "lumbar back treatment had been conservative in nature and 'generally successful' in controlling those symptoms," it is not readily apparent the ALJ considered all of the evidence showing Plaintiff's difficulty walking and the numerous medications with which he was treated without success. [*Id.* at 32.] Plaintiff argues,

> It is unclear how the ALJ came to the conclusion that Williamson's treatment for back pain was generally successful and his symptoms were managed well with various medications. Williamson submits that the ALJ's explanation of the RFC lacks an adequate explanation and the ALJ did not meet the minimal requirements of Ruling 96-8p to explain the RFC assessment he made, and explain his consideration of the medical evidence and other evidence relevant to the determination.

[*Id.* at 33.]

The Administration has provided a definition of residual functional capacity ("RFC") and explained what a RFC assessment accomplishes:

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities. Ordinarily, RFC is the individual's maximum

31

> remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. . . .

SSR 96-8p, 61 Fed. Reg. 34,474–01, at 34,475 (July 2, 1996) (internal citation and footnotes omitted).   The RFC assessment must first identify the Plaintiff's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945. *See id.* Only after this identification and assessment may RFC be expressed in terms of the exertional levels of work: sedentary, light, medium, heavy, and very heavy. *Id.*

In assessing RFC, the ALJ must consider limitations and restrictions imposed by all of a claimant's impairments, including those that are not severe. *Id.* at 34,477. While a non-severe impairment standing alone may not significantly limit a claimant's ability to do basic work activities, it may be crucial to the outcome of a claim when considered in combination with limitations or restrictions due to other impairments. *Id.* If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

Additionally, the Administration has determined that in assessing RFC, the ALJ

> must consider only limitations and restrictions attributable to medically determinable impairments.  It is incorrect to find that [a claimant] has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain, due to factors such as age or height, or whether the [claimant] had ever engaged in certain activities

32

> in his or her past relevant work (e.g., lifting heavy weights.)
> Age and body habitus (i.e., natural body build, physique,
> constitution, size, and weight, insofar as they are unrelated to
> the [claimant]'s medically determinable impairment(s) and
> related symptoms) are not factors in assessing RFC . . . .

SSR 96-8p, 61 Fed. Reg. at 34,476.  To assess a claimant's RFC, the ALJ must consider

all relevant evidence in the record, including medical history, medical signs, laboratory

findings, lay evidence, and medical source statements.  *Id.* at 34,477.  SSR 96-8p

specifically states, "[t]he RFC assessment must always consider and address medical

source opinions.  If the RFC assessment conflicts with an opinion from a medical source,

the adjudicator must explain why the opinion was not adopted."  *Id.* at 34,478.

The ALJ must also consider the degree to which any non-exertional limitations may

further erode Plaintiff's ability to work. The Administration addressed the role of

nonexertional limitations in an RFC assessment as follows:

> Nonexertional capacity considers all work-related limitations
> and restrictions that do not depend on [a claimant]'s physical
> strength; i.e., all physical limitations and restrictions that are
> not reflected in the seven strength demands, and mental
> limitations and restrictions. It assesses [a claimant]'s abilities
> to perform physical activities such as postural (e.g., stooping,
> climbing), manipulative (e.g., reaching, handling), visual
> (seeing), communicative (hearing, speaking), and mental (e.g.,
> understanding and remembering instructions and responding
> appropriately to supervision). In addition to these activities, it
> also considers the ability to tolerate various environmental
> factors (e.g., tolerance of temperature extremes).
>
> As with exertional capacity, nonexertional capacity must be
> expressed in terms of work-related functions . . . . Work-related
> mental    activities    generally    required    by    competitive,
> remunerative work include the abilities to: understand, carry
> out, and remember instructions; use judgment in making
> work-related decisions; respond appropriately to supervision,
> co-workers and work situations; and deal with changes in a
> routine work setting.

SSR 96–8p, 61 Fed.Reg. at 34,476.

### *The ALJ's RFC Assessment*

In making his RFC assessment, the ALJ stated, "I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p.  I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p."  [R. 20.]  The ALJ's decision to discount Plaintiff's credibility, in part because he only required conservative treatment, is supported by substantial evidence.   The ALJ noted,

> [t]he record does not substantiate the claimant's allegations as to the severely restricting nature of his musculoskeletal impairment noting that despite continued complaints of totally disabling back pain, he was nonetheless routinely described as "not in any apparent distress" when examined in June 2008, May 2009, July 2009, and October 2009. (Exhibits 11F, 13F, and 14F)  While the claimant has a history of lumbar degenerative disc disease, there is no indication that the claimant has required surgery or inpatient hospitalization for this condition.   A review of the evidence of record fails to reveal any signs of muscular atrophy, strength deficits, circulatory compromise, neurological deficits, muscle spasms, or change in weight, which may be reliable indicators of long-standing, severe or intense pain, and/or physical inactivity. In spite of his allegations of disabling back pain, the claimant has not sought additional treatment including physical therapy, biofeedback, surgery, or treatment from a pain clinic. The record includes statements by doctors suggesting the claimant was not being completely truthful regarding the need for narcotic pain medications and he was seeking emergency treatment in order get prescriptions for these medications. (Exhibits 8F, 11F, 12F and 14F) The undersigned finds that as a result of the claimant's history of drug seeking behavior, some exaggeration of the claimant's symptoms and complaints of pain can be assumed.

34

[R. 21–22.]

### *Analysis*

That the ALJ did not recite every instance when Plaintiff tried or had to change pain medication does not mean the need for pain medication was ignored or overlooked or that the treatment Plaintiff received was not properly considered conservative or successful. *See generally, Robinson v. Sullivan*, 956 F.2d 836, 840 (8th Cir. 1992) (finding that generally conservative treatment is not consistent with allegations of disability); *Gaskin v. Commissioner of Social Security*, 280 Fed.Appx. 472, 477 (6th Cir. 2008) (finding that evidence of no muscle atrophy and that claimant "possesses normal strength" contradicted Plaintiff's claims of disabling physical impairment]); *Cruse v. Bowen*, 867 F.2d 1183, 1186 (8th Cir. 1989) ("The mere fact that working may cause pain or discomfort does not mandate a finding of disability".).

Upon review, the Court finds the ALJ adequately explained the basis for his RFC findings. It is the duty of the ALJ determine the Plaintiff's RFC, not the reviewing Court. 20 C.F.R. § 404.1546(b). Accordingly, based on a review of the decision, the Court cannot conclude that the ALJ's RFC findings are not supported by substantial evidence.

### CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be AFFIRMED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

February 3, 2014

35

Greenville, South Carolina